Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 115 | **DATE** | 8/25/2004 |
| **CASE TITLE** | Chears vs. Potter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held. For the reasons stated in the attached memorandum opinion, the defendant's motion for summary judgment is granted in part and denied in part. The parties are directed to exchange proposed witness lists by 09/03/04. Motions in limine are to be filed by 09/10/04. Responses to the motions in limine, if any, are to be filed by 09/17/04 and replies, if any, are to be filed by 09/24/04. The parties are directed to submit to this Court's chambers the joint pretrial order as outlined in this Court's standing order regarding pretrial orders by 10/08/04. Copies of the Court's standing order regarding pretrial orders maybe obtained from this Court's web page or from this Court's Courtroom Deputy. Pretrial conference set for 10/13/04 at 10:30 a.m. Jury Trial set to begin on 10/18/04 at 9:30 a.m. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | AUG 2 6 2004 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. Memorandum Opinion distributed in open Court. | | | | 30 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | MW6 | courtroom deputy's initials | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BETTY L. CHEARS,                )
                                )
                 Plaintiff,     )
                                )
         v.                     )    No. 03 C 115
                                )
JOHN E. POTTER, Postmaster General )
of the United States,           )
                                )
                 Defendant.     )

**DOCKETED**
AUG 2 6 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant's motion for summary judgment. For the reasons stated below, we grant the motion in part and deny the motion in part.

## BACKGROUND

Plaintiff Betty L. Chears ("Chears") began working for Defendant on November 4, 1967. According to Defendant, in March of 1994, Chears was transferred to Administrative Services to be trained as a contract technician. Chears' supervisor at Administrative Services at that time was Robert Rigsby ("Rigsby"). Chears contends that she began working with Rigsby as her supervisor

1

in the fall of 1993. Chears claims that while Rigsby was her supervisor, Rigsby raped Chears. According to Chears, in 1994 and 1995 Chears accompanied Rigsby to his apartment and had non-consensual sex with Rigsby on three or four occasions because Rigsby told her that she would lose her job if she refused. Chears also alleges that Rigsby exposed himself in front of Chears on another occasion in the spring of 1994. Chears claims that she reported the incident a week later to a manager in the Labor Relations Department named Rosemary Gray ("Gray"). According to Chears, Gray told Chears not to tell anyone about the exposure incident and to wait and see if Rigsby stopped such behavior. Chears alleges that Rigsby then began making comments of a sexual nature to her and that he would call Chears into his office and ask her to have sexual intercourse with him and would touch Chears' legs and hands. Chears claims that in 1996 Rigsby sodomized Chears in the workplace lunchroom. According to Chears, between February of 1994 and August of 1998, Rigsby sexually harassed Chears approximately twice a week in his office. Chears also alleges that in early 1997 Rigsby showed an erection to Chears, once with his pants zipped and once with his pants unzipped. Chears claims that she sent an anonymous letter to Rigsby's supervisor complaining about the harassment. According to Chears, she spoke with the secretary of Cynthia Kellogg ("Kellogg"), the Director of Human Resources, knew that Chears had sent the letter and advised Chears not to tell Kellogg. Chears claims that she did not report the harassment until mid-1998 because she was afraid of losing her job.

On June 19, 1998, Chears filed an administrative complaint with Defendant's Equal Employment Opportunity ("EEO") office alleging that she had been sexually harassed by Rigsby. After filing her EEO complaint Chears was transferred away from Rigsby's office. Chears retired from employment with Defendant on February 2, 2001.

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations or denials in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Religious Discrimination Claim

We note initially that Chears included a discrimination claim based on religion in her complaint. Chears did not raise this claim in her complaint in the administrative proceedings and acknowledges in her answer to the instant motion, that the claim should be dismissed. (Ans. 4 n.2). Therefore, we grant Defendant's motion for summary judgment on the religious discrimination claim.

II. Claims Related to Events That Occurred Prior to May 5, 1998

Defendant argues that Chears failed to exhaust her administrative remedies in regards to the claims related to events that occurred prior to May 5, 1998. Defendant

argues that Chears failed to comply with 29 C.F.R. § 1614.105(a) which states in part the following:

> § 1614.105 Pre-complaint processing.
> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action. . . .

29 C.F.R. § 1614.105(a). *See also Clark v. Runyon*, 116 F.3d 275, 276, 279 (7th Cir. 1997)(affirming Magistrate court's ruling granting summary judgment for the defendant because plaintiff employee failed to contact the Postmaster General EEO Office within the 45 day limit). Chears admits pursuant to Local Rule 56.1, that Chears contacted the EEO office on June 19, 1998. ( R SF 3). Therefore, Chears could only report claims relating to events that occurred on or after May 5, 1998. ( R SF 3). Chears argues that Defendant waived the forty-five day notification requirement and that the notification period should be estopped under the doctrine of equitable estoppel. Pursuant to 29 C.F.R. § 1614.604(c) the 45 day notification time limit is "subject to waiver, estoppel and equitable tolling." 29 C.F.R. § 1614.604(c). *See also Clark*, 116 F.3d at 276 (stating that the 45 day requirement is not jurisdictional).

In support of her waiver argument, Chears merely states in a conclusory

fashion that "[t]here is no question that each of the sexual claims raised in the present complaint were, in fact, addressed as part of the administrative process pursuant to Chapter XIV of Title 29, Code of Federal Regulations." (Ans. 3). However, Chears points to no evidence that would support such an assertion. To defeat a motion for summary judgment Chears must point to some admissible evidence that the trier of fact can consider as a basis to find in Chears favor at trial. Neither has Chears pointed to any evidence to support her argument for equitable estoppel nor made any argument that would warrant such equitable relief. Therefore, we grant Defendant's motion for summary judgment on the claims based on events that occurred prior to May 5, 1998.

III. Claims Related to Events That Occurred On or After May 5, 1998

Defendant argues that, in regards to claims related to events that occurred on or after May 5, 1998, there is not sufficient evidence of sexual harassment to constitute a hostile work environment. Defendant also argues that even if the allegations are sufficient to support a hostile work environment claim, Defendant did not take a tangible employment action against Chears and Defendant was not negligent in preventing the harassment.

A. Hostile Work Environment

An employer is prohibited under Title VII from maintaining a "hostile work

environment." *Cooper-Schut v. Visteon Automotive Systems*, 361 F.3d 421, 426 (7th Cir. 2004). A hostile environment is defined as an environment that is "permeated with discriminatory intimidation, ridicule and insult." *Id.* A plaintiff bringing a hostile work environment claim must establish that: "1)[s]he was subject to unwelcome harassment; 2) the harassment was based on h[er] race [or sex]; 3) the harassment was severe [or] pervasive so as to alter the conditions of the employee's environment and create a hostile or abusive working environment; and 4) there is basis for employer liability." *Id.* (quoting *Mason v. Southern Illinois University at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000)). Factors considered in determining whether there is a hostile work environment include: 1) the "frequency of discriminatory conduct," 2) "its severity," 3) whether conduct is "physically threatening or humiliating" or merely offensive, 4) whether conduct "unreasonably interferes with [the plaintiff's] work performance," and 5) the "social context in which events occurred." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002).

Defendant argues that Chears' only claims as harassment within the 45 day limit is that "Rigsby complimented Chears' complexion and told her that she had a pretty body on two or three unknown occasions," and told her "'do you want some' or 'give me some' on two or three unknown occasions." (Reply 2). Defendant, however, is only able to make such an argument by ignoring much of the evidence presented by Chears.

7

### 1. Statement of Additional Fact Number 11

Chears claims that "[b]etween February of 1994 and August of 1998, Rigsby did something that Plaintiff considered to be offensive or sexually harassing approximately twice a week in his office." (SAF 11). Defendant does not deny Chears' statement of additional fact number 11. Defendant's only response is that the allegations in additional fact number 11 are immaterial because they concern events outside the pertinent 45 day limit. We do not agree. Defendant acknowledges that Chears contacted the EEO office on June 19, 1998, and Chears states expressly in additional fact number 11 that such harassment occurred between February of 1994 and August of 1998 which includes time within 45 days of June 19, 1998.

### 2. Statement of Additional Fact Number 22

Chears also claims that "[b]etween April 1, 1998, and June 19, 1998, Rigsby would consistently call her into his office and ask for sex . .[and] would make statements such as 'Do you want some? can I have you? am I allowed to say your body is pretty.'" (SAF 22). Defendant's only response to statement of additional fact number 22 is that it mischaracterizes the cited deposition testimony. Defendant offers no elaboration to support its conclusory assertion regarding the mischaracterization. A review of the evidence shows that Defendant is again

mistaken. In support of additional facts number 22, Chears cited to pages 63-66 of her deposition transcript. When asked what discrimination occurred between April 1, 1998, and June 19, 1998, although Chears did not appear to be absolutely certain at her deposition, she indicated that she thought that during the period Rigsby called her into his office to ask for sex. (Ch Dep. 63, L5-9). Chears also testified at her deposition that between April 1, 1998, and June 19, 1998, Rigsby told her that he "wanted" her "body," (Ch Dep. 66, L 18), told her "Can I have you?," (Ch Dep. 66, L 25, 65, L 11-15), and told her "your body is pretty," (Ch Dep. 63, L19-21). Chears also stated that during the period Rigsby told her "Do you want some?," "Can I have you?," and "Am I allowed to say your body is pretty?" (Ch dep. 63, 13-17).

### 3. Statement of Additional Facts Numbers 8, 9, and 10

Chears claims that up until she filed the complaint about harassment in June of 1998, Rigsby made sexual comments and touched Chears. Chears claims that Rigsby asked Chears to go to a hotel with him while he rubbed against her. (SAF 8). Chears also claims that during that period Rigsby told her he wanted to "f___" her, and touched Chears on her hands and legs. (SAF 9)(SAF 10). In response to statement of additional facts numbers 8 and 9, Defendant argues that the facts therein are immaterial because the allegations do not concern events within the pertinent 45 day limit. Chears asserts in statement of additional facts number 10 that the

9

incidents asserted in statement of additional facts numbers 8 and 9 occurred up until Chears reported the harassment which includes the time within the 45 day limit. Defendant claims that such an allegation is contradicted by Chears' deposition testimony. First of all, a contradiction in Chears' deposition testimony would not automatically render Chears' cited portions of the deposition inadmissible. Secondly, Defendant failed to provided any elaboration for its objection and its cited transcript pages offer no insight into its argument.

Defendant also argues in response to additional fact number 8 that Chears' deposition testimony contradicts additional fact number 8 because Chears stated that Rigsby never touched her during the period in question. Chears alleges in additional fact number 9 that Rigsby touched her hands and legs. Chears stated in her deposition that Rigsby would try to feel her legs and would touch her hands. (Ch Dep. 31, 22-25). Defendant argues that Chears testified that Rigsby did not touch her between April 1, 1998 and June 19, 1998, and in support Defendant cites to page 70 of Chears' deposition transcript. However, there is no such testimony on page 70 or even testimony from which such a conclusion might be inferred. Thus, after we sift through the smokescreen of Defendant's meritless objections, it is clear that there is sufficient evidence of possible harassment regarding events during the 45 day limit. We find that based upon the evidence in support of plaintiff's position, Chears has shown that the harassment was sufficiently pervasive and severe to create a hostile work environment.

B. Vicarious Liability

In accordance with the rulings in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), "[e]mployers are strictly liable for harassment inflicted by supervisors, subject to an affirmative defense when the harassment does not result in a tangible employment action." *Williams v. Waste Management of Illinois*, 361 F.3d 1021, 1029 (7th Cir. 2004). If the employer shows that no tangible employment action was taken against the plaintiff, the plaintiff must show that the defendant "was negligent in discovering or remedying the harassment." *Durkin v. City of Chicago*, 341 F.3d 606, 612 (7th Cir. 2003). An employer may defend against allegations of negligence by establishing: 1) "it exercised reasonable care to discover and rectify promptly any sexually harassing behavior," *Id.*, and 2) "the plaintiff "failed to take advantage of any preventive or corrective opportunities provided by the [defendant] to otherwise avoid harm." *Hardy v. University of Illinois at Chicago*, 328 F.3d 361, 364-66 (7th Cir. 2003). The employer need only exercise reasonable care to prevent and promptly resolve sexual harassment complaints, but the employer is not required to show that its efforts were successful. *Id.* The plaintiff must also show that the "employer had notice of sexual harassment. . . ." *Durkin*, 341 F.3d at 612; *Cooper-Schut*, 361 F.3d at 426. When an employer designates a person to accept harassment complaints, the plaintiff is expected to use that channel and to defeat a

11

motion for summary judgment, the plaintiff must also show that "she provided the employer with enough information so that a reasonable employer would think there was some probability that she was being sexually harassed." *Durkin*, 341 F.3d at 612.

Defendant argues that it did not take a tangible employment action against Chears. A tangible employment action is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hardy*, 328 F.3d at 364(quoting *Ellerth*, 524 U.S. at 761 ). *See also Robinson v. Sappington*, 351 F.3d 317, 337 (7th Cir. 2003)(indicating that a constructive discharge may constitute a tangible employment action in some circumstances). Chears first argues that tangible employment actions were taken against her in 1993, 1994, 1996, and 1997, but, as indicated above, such events cannot be considered due to the untimely disclosure of the events to the EEO office. The only tangible employment action claimed by Chears that occurred on or after May 5, 2002, was that Chears was transferred to the mail-room floor and placed on the night shift after she filed her complaint against Rigsby. (Ans. 9)(SAF 20). Defendant does not respond to this argument at all in its reply brief. The only mention of this fact is Defendant's Local Rule 56.1 response to additional fact number 20. Defendant cited page 95 of Chears' administrative hearing transcript and contends that at Chears' administrative hearing Chears testified that after she

complained she was transferred to window services. (Adm. Hearing 95, L 18-24). First of all, based on our review of the pages cited by Defendant, Chears did not testify at the hearing that she was immediately transferred to window services after she complained. She merely testified that she was transferred sometime after she complained. There could have been a period in the mail-room before she was transferred to the window services. Secondly, even if she was transferred to window services immediately after she complained, Defendant has not provided any information or evidence to rebut Chears' contention that her transfer after she filed her complaint constituted a tangible employment action. We are thus left with insufficient information to determine whether or not the transfer constituted a tangible employment action. It is possible that a transfer can constitute such an action if, for example, it involved significant alterations in responsibilities or benefits. Defendant acknowledges that a transfer occurred after Chears filed a complaint against Rigsby. Defendant, as the movant, has the burden to establish that there are no genuine disputed material facts and any ambiguities in the facts due to Defendant's failure to address the pertinent issues must be resolved in Chears' favor. *See Bay*, 212 F.3d at 972(stating that for a summary judgment motion the court must make all reasonable inferences in favor of the non-movant).

Defendant cites page 50 of Chears' deposition transcript and argues that Chears "did not have any complaints about her transfer to the window position" to show that the transfer was not adverse. ( R SF 20). However, page 50 of the

transcript contains no such representation. Chears merely testified that she has no complaint about the transfer because she "need[ed] to get away" from Rigsby and that she was distressed at the time and was glad that the people in her new position left her alone and did not bother her. (Ch Dep. 50). Such testimony is not sufficient to conclude that the transfer did not constitute a tangible employment action. Therefore, and in the absence of sufficient information concerning the transfer at issue we cannot conclude as a matter of law that Defendant did not take a tangible employment action against Chears. Therefore, we cannot find that Defendant is entitled to the *Ellerth* affirmative defense and Defendant, thus deprived of such a defense, is strictly liable for the alleged harassment by Rigsby since Rigsby was Chears' supervisor.

## CONCLUSION

Based on the foregoing analysis, we grant Defendant's motion for summary judgment in regards to claims based on events that occurred prior to May 5, 1998, and deny Defendant's motion for summary judgment on claims based on events that occurred on or after May 5, 1998. We also grant Defendant's motion for summary judgment on the religious discrimination claim.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 25, 2004